Good morning, your honors. May it please the court, Christy Hughes from Federal Defenders on behalf of Mr. Ramos, and I'll attempt to reserve, and I'll keep track of the time, I'll attempt to reserve two minutes for rebuttal. The jury instruction for the assault charge was constitutionally erroneous because it omitted the necessary element of a mens rea. This court acknowledged last year in Acosta, Sierra, that the same instruction the district court gave here did not specify the criminal intent required for a threat. And it's clear because of this omission, the instruction was misleading and inadequate to guide the jury's deliberation because the jury asked the district court to clarify the mental state required for a threat. Can I ask you this? If we didn't have that jury note, would this be a completely different case in terms of harmless error? Because I would have otherwise expected that this case could just as easily have been resolved under the attempted battery prong of the jury instruction. So are you relying solely on the fact that we got this note to presume that the jury had rejected that theory and instead had gone on the threat prong? Well, I have two responses regarding harmlessness. First of all, the government completely failed to brief harmlessness, and so I don't think this is the extraordinary case where the government should ignore, or I'm sorry, where this court should ignore the fact that the government weighed the issue and sua sponte determined harmlessness and undertake. Well, I thought they did brief harmlessness by pointing to the split verdict. Well, what they said, and this is on page 21 of the government's brief, is that the split verdict demonstrates that the jury instruction was adequate to guide the deliberations. That's a question of whether or not there was error because the standard for whether or not the instruction is erroneous is whether or not the instruction is misleading or inadequate to guide the jury's instruction. Word harmless never appears in the government's brief. There's no argument heading. There's nothing. But regardless, even if the government had briefed harmlessness, I don't think there's any way they could demonstrate on this record that it was harmless beyond a reasonable doubt. First of all, because of the jury note demonstrating that they had rejected the other two theories and they were going on the threat. Twenty minutes later after they get the response from the district court, they went on the threat. Well, we don't really know that. I mean, they could have been going on the threat for one of the claims, accounts, not the other one. I'm sorry. They could have been going on the threat for one of the accounts, not the other one. They could have. But I think if your honors look at the evidence, that wasn't the way the evidence played out. The intent as to both agents was pretty much the same. It was really the way each agent perceived the threat that was different. And Agent Roberts, I think the jury discredited his testimony. He was the one that when he first started shooting, he's at the back end of the car. That's his first shot. So I think the jury rejected that he actually reasonably felt in fear for his life. The second point on harmlessness is this was one of the two main contested issues in the case, Mr. Ramos' intent. There were three and a half days of testimony on this that this court would have to go through. And the evidence was really conflicting. We have the agents discussing where he was driving. We have the forensic testimony. We have the material witnesses discussing what Mr. Ramos was intending to do. And there was argument by the lawyers on what his intent was. This was really one of the two main contested issues. And so that, in addition to the jury note, I just don't think there's any way the government, even if it had briefed it, there's any way the government could shoulder the burden and demonstrate harmlessness beyond what we found out. How exactly would you explain the intent on a threat prong? What does they have to intend to do? Well, this court has said that this is a general intent statute looking at the statute as a whole. We've argued that the nature of a threat is to intend a specific result. That's the way LaFave defines it. Model Penal Code defines an assault as an attempt to put another in fear. So a threat has always required an intentional threat. If you don't have the intent to threaten, you may have some sort of reckless act that reasonably puts a victim in fear. But you don't have a threat. That's the nature of a threat. Wouldn't that expose any reckless driver who puts somebody in fear to possible prosecution? And if it happened to be a federal defendant, knowingly or unknowingly, could wind up with a federal felony prosecution. It absolutely would. For bad driving. It absolutely would. For texting or cell phoning or looking out the window or whatever. Correct, Your Honor. And that's why it's not a threat. But I don't even think this court has to go that far and judge whether or not it's knowingly or intentionally because there was just simply no mental state whatsoever included for the threat prong. The other two have intentionally and willfully, the other two types of assault. This one has absolutely nothing. And that was what this court noted in Acosta-Sierra is this new jury instruction for the threat theory just simply doesn't specify what the criminal intent is that's required. The government, I mean, it's strange because both you and the government rely on Acosta-Sierra. And my understanding of what the government is saying is that Acosta-Sierra says that the intent has to be an intent. I guess they're saying an intent to drive the car in a way that somebody could be made fearful rather than intending to make them fearful. Acosta-Sierra I don't think is really that helpful for this case other than the fact that it notes in footnote 3 that there's no mental state because it wasn't addressing this jury instruction. It's addressing the old instruction. And it's addressing their, really it says the district court error. This should have been analyzed as an attempted battery. The threat really wasn't at issue. And to the extent it was, it really addressed the second prong, which is whether or not the district court applied the correct standard in determining whether that agent was reasonably in fear. The district court considered things that the agent didn't know, and this court said it was wrong. But it really, all Acosta-Sierra says is you have to have the intent to assault. And here assault is defined three separate ways. And so you have to plug in which theory of assault you're considering here, and that's the intent that's required. So if it's the intent to injure, then you have to have the intent to injure. If it's the intent to strike, you have to have the intent to strike. And if it's intent to threat, you have to have the intent to threat. It's not sufficient just to tell the jury you have to have the intent to assault because the jury doesn't know what an assault is. Can I ask you, I was a little surprised that you said you don't think, is it Acosta, I thought it would have said Acosta, but Acosta-Sierra, isn't that relevant to the case either way? I guess I thought, I read Acosta-Sierra as having essentially resolved the legal issue, at least, that you want us to decide. Well, I don't think that, I think it resolves the issue of whether or not there's a criminal intent required or stated in the instructions. I think that, it notes that. But in terms of what the intent is here, it doesn't address whether or not you need an intent to threaten or whether or not you can unintentionally threaten someone or knowingly threaten. It just doesn't. I'll tell you the passage I'm looking at. It's on page 1123 where the court, it's okay. I mean, the court notes, as you said in footnote 3, that the current instruction doesn't have a mens rea that's associated with the threat prong. But then I thought on page 1123 the court was analyzing that prong and eventually said that the district court erred in holding that assault under the reasonable apprehension of harm prong, and that's the same prong we're talking about in this case, right, did not require a finding that Acosta-Sierra intentionally used force against Officer Lopez. So I thought the court there was saying that even that last prong, the putting the officer in reasonable fear for his or her safety prong, does contain an intent requirement very much along the lines that you're arguing for here. Well, let me answer that in two parts. First of all, I think it's on point in the sense that there's absolutely no mental state required here, and so for that reason the instructions are erroneous and you should reverse. Regarding what the correct instructions should be, I like Your Honor's reading, so I'll go with that. I don't know that the threat was actually the main, the issue that they were addressing here. It was the intentional use of force, but I don't know that the theory of the case here was that it was a threat. I think he was arguing that he should get a diminished capacity instruction because, you know, he wasn't able to form the intent to intentionally use force because the officer hadn't seen it. I don't know that it was specifically framed as the threat. I agree that the district court erroneously analyzed this under the threat prong, and this court said this should really be an intentional battery. But I'm absolutely delighted with the interpretation that it should be an intentional threat. But again, I don't know that we need to go that far because there's just no criminal intent whatsoever in the instructions. Well, but we're going to need to say something here, whether it's in a published or unpublished decision. Stating if there is a separate mens rea requirement for that last prong, what it is, I guess I'm just asking for your help in interpreting Acosta Sierra. You don't think that Acosta Sierra has settled the score and that we do need to say something further beyond what we've already said there? I do because Acosta Sierra notes that the mental state of Section 111 is really a source of confusion, and I don't think that Acosta Sierra What it says at the end of the section that Judge Wofford mentioned is the district court erred in holding that assault under the reasonable apprehension of harm prong. That's the one we're talking about here. Acosta Sierra did not require a finding that Acosta Sierra intentionally used force, so it seems to hold that there has to be a finding that Acosta Sierra intentionally used force. I guess the issue with this case is intentionally using force could be Mr. Ramos intentionally driving his car. And also that leaves out the question of purpose. What was his objective in using the force? Correct. I guess I didn't really understand Your Honor's point in the distinction between this case and Ramos, and that, I think, is the distinction. There is a difference between intentionally using force and intentionally using force with the purpose of putting the victim in harm. Or even just using force. I mean, would an instruction that simply said, if you find the defendant to be unreasonable to defend, use force, intending to create an apprehension of imminent bodily harm or danger, would that do the job for you or something like that? I think you'd need knowingly used force. Okay. But yes, as long as the purpose of putting the victim in reasonable apprehension of imminent bodily injury is there, I think that would cover what the jury perceives. Apparently there's a revised instruction now. Pardon? There's apparently a revised model instruction now. Is that right? I'm not aware of it. I'm sorry. The instructions changed in 2010 from the one that was used in Acosta Sierra to the one that was used here. Is there another one now? Pardon? I'm sorry. I thought there was another one now. I'm not aware of it. I don't. Yes. I was going to ask you whether you think the new one is good enough. I'll reserve the remainder of my time and address that in a rebuttal. Thank you. Good morning, Your Honors. May it please the Court, my name is Melissa Meister. I represent the United States. Is there a revised model instruction now? Yes, there is, Your Honor. It was revised in December of 2012, and it now adds the word intentionally before threatens. So the 2012 version of model during Instruction 8.4 basically reads one forcibly assaults another when that person dot, dot, dot intentionally threatens another. All right. So why isn't that a pretty good education? I thought the first one was wrong. Well, Your Honor, I would submit the new instruction is a bit like driving in Southern California. When you're driving on the freeway, you see signs that say via Ranchero Way. That literally translates into Ranchero Way Way. It's overkill for the purpose of clarity, and the new instruction is a bit like that. The old instruction required a threat, and the dictionary definition of threat, Merriam-Webster defines it as an expression of the intention to inflict evil, injury, or harm. Black's Law Dictionary defines it as a communicated intent to inflict harm on another. And then why shouldn't the district judge have given that charge instead of simply saying go back and read knowingly in the charge I gave you, which I understand is a common practice, engage in it myself, but still if that's the definition, then shouldn't he have? Well, yes, Your Honor. There was a long colloquy between both parties below and the district judge where they were going back and forth about whether one can accidentally intend to threaten somebody. And what the district judge decided is it's not possible to inadvertently or accidentally threaten someone because the very definition of the word threat. That may be, but the jury apparently thought otherwise. Your Honor, I think this court, especially in appeals, should be wary of trying to divine what goes on in the mind of jurors. But they specifically said that. Does it have to be intentional or does it depend only on the perception of the victim? Yes, Your Honor, but that was after two hours of deliberation, and I can assure you they weren't deliberating on the alien smuggling charges because the defense below conceded on that. They were deliberating back and forth about two agents, Agent Wilson where the testimony was the defendant revved up his car and drove straight at him, and then Agent Roberts where the testimony was after swerving to avoid Agent Wilson, then Agent Roberts testified he was driving at him. So it seems likely, and this was argued in the briefs, that the jury was confused about Agent Roberts rather than Agent Wilson, and the instruction, which was to go back, look at the word, the definition of knowingly, go back and look at the word of forcible assault, which is threatening to inflict injury coupled with an apparent ability to inflict that injury and make a decision, and the decision they made about 25 minutes later was guilty as to Agent Wilson but not guilty. I mean, sometimes you say the sky is threatening. I'm sorry, Your Honor? When it sometimes says the sky is threatening, right? Yes, Your Honor. You're not ascribing any purpose to the sky. No, Your Honor, but in this case, the forcible assault is defined as simple assault has been at the common law for decades, which is you have to threaten to inflict an injury. I understand, but you are arguing that the word threat inherently includes an intent. Yes, Your Honor. All right, I just gave you an example or it doesn't. There are other definitions that can be used as the sky looks threatening. There are other definitions of threat, but in a legal term, under the assault statute, the word threat is commonly meant an intention to do harm to somebody. It can be ironic. I'm going to hit you with a pool noodle, for example, or I'm going to hit you with a foam, but here the assault statute requires a threat, and it requires also that there be an apparent ability to carry out that threat, and then third, it requires that there's a reasonable apprehension. To answer Judge Carr's question, this isn't going to cause a bunch of reckless conduct to suddenly fall under the federal assault statute. I can give you an example. For instance, if this gentleman was driving, let's say he was approaching the checkpoint, he had his foot on the gas, and he was still smuggling aliens, and the aliens in the backseat somehow got into some sort of a physical confrontation, and he turned around, and he was telling them to stop, but his foot was still on the gas. While this was happening, Border Patrol came up and was trying to tell him to stop, and he kept driving at them. You have that reasonable apprehension of bodily harm. It's reckless conduct, but it's not an intent to threaten because he didn't have the mens rea of driving at the agent. Here, what the jury found and what he was instructed on was that he had that intent to threaten, and this court has held that. How did he say that? I'm sorry. Yes, Your Honor. How were they instructed on that? Because they were instructed that there had to be a threat. But you just said that they were instructed that there was an intent to threaten, and they were not so instructed, and just by using the phrase, as you just did, is an illustration of the fact that there is content to that phrase. I apologize for misspeaking, Your Honor. Certainly the new model instruction, which has intentionally threatened, is, as I suggested, overkill clear. It's very clear that there's intentionally threatened. But I think the 2010 instruction. Isn't a bit of overkill worthwhile? I mean, so the jury does understand, and it is crystal clear, and so they don't have to try to recall what the dictionary definition of threat might be when they're back in the jury room. I agree with no idea what evoked that question. But I'm just concerned. It just seems to me that the new instruction is not overkill. It's very clear, and it avoids this problem coming up in the past. How is this harmless? Let's assume that we agree with the defendant that this charge was improper. Okay. How can we sustain the conviction then? Well, it's true that I don't think the person who briefed this mentioned harmlessness, but this court can affirm for any reason in the record, and I believe it's harmless because there was substantial testimony from a number of the agents that would substantiate Mr. Ramos intentionally threatened to do harm or that he attempted to batter Agent Wilson. Numerous agents testify that when he turned back around at the checkpoint, he revved the engine, he accelerated towards Agent Wilson, and that numerous agents also testified that he was heading in the direction of Agent Wilson. In addition, the expert estimated that at one point the vehicle was seven feet away from Agent Wilson. All that combined would serve to substantiate an intentional threat or attempted battery, Your Honor. But that's not the question for harmlessness, is it? I mean, you've just explained why there might have been sufficient evidence to sustain the conviction and why he's not going to get a judgment of acquittal here. But, I mean, as I understand it, you'd have to show beyond a reasonable doubt that the jury did not rely on just the mere perception of the potential for bodily injury. And in light of that note, I mean, I guess I would say if we didn't have the note, I think it would be a closer case. But in light of the note, I'm really struggling to see how you can sustain a harmlessness argument here. Well, Your Honor, I mean, there's two different ways to read the note. The government certainly suggested its way, which is that they were struggling with Agent Roberts because the testimony was so clear that there was no – But they were struggling with Agent Roberts with regard to this very question, not just in general. Correct, Your Honor. Well, that appears to be what they were struggling with. They asked, does it have to be an intentional threat or does it have to be a perceived threat? So what you're saying is, but it still could have been harmless as to Agent Wilson. Yes, Your Honor, because I think they understood when they were redirected to knowingly, to the definition of forcible assault. When the definition of forcible assault does contain knowingly and intentional language, it's just not right next to the word threat. They went back in approximately 25 minutes, analyzed it, and said, okay, we now understand that it's an intentional assault, guilty as to Agent Wilson, not guilty as to Agent Roberts. I think when they went back and they understood the word knowingly, they understood – When they went back, what they would have seen is that there were mens rea words in front of the other two prongs and not in front of this one. Yes, Your Honor, and that is the way it is in numerous of the instructions in other circuits because the word threat contains by its very nature an intentional – So the definition of knowingly or willfully was completely irrelevant. Well, no, Your Honor. The defense actually below asked the court to have them look at instruction number 19, which was the knowingly, meaning that you had to commit the entire assault knowingly. The word knowingly doesn't appear anywhere in the instruction for the assault charge. No, it does not, Your Honor. That was a separate charge of knowingly that they were – Well, which related to the alien smuggling charge. I don't see how directing the jury to the knowingly definition helps at all with respect to the assault charge because that word never – it's never even referenced in the instruction. If anything, it seems to me to confuse the issue. Right. They ask about this and that and they're told, well, look at something else. I mean, that's my concern is that on the harmless error issue, it's just hard for me to see how you can say beyond a reasonable doubt when you have the ambiguity and uncertainty reflected in the note and the inability to penetrate into the jury room to find out just what was on their minds. And then you add the issue of knowingly that has nothing to do with the statute or the charge. No, Your Honor, it doesn't. But the defense requested that knowingly go in front of forcible assault at the beginning of the case, and so they asked that the jury be redirected at the end of the case. The defense in this case actually asked for an instruction that's never been the assault law. They asked for knowingly, intentionally, and willfully, forcibly assaulting, and that's a specific intent crime, and this Court has repeatedly held that it's a general intent crime. The only intent here needs to be the intent to assault, and that's the intent to threaten, Your Honor. And I see that I'm out of time, so if you have further questions, I'm happy to answer or I can simply sit down. Thank you very much. I'll give you one minute in rebuttal. So my question is, having now heard the new instruction, is it fine as far as you're concerned? I'm sorry, I couldn't hear. Having now heard the new instruction, would you say that's fine? Yes, I think that's absolutely fine, and that solves our issue. Had that been given to the jury, I think we wouldn't be here. Okay. Thank you. Thank you, Your Honor. The case of United States v. Ramos is submitted.
judges: Carr, Berzon, Watford